UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MJ METAL PRODUCTS, INC.,

  Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD,

  Respondent.

NATIONAL LABOR RELATIONS
BOARD,

  Petitioner,

v.

MJ METAL PRODUCTS, INC.,

  Respondent.

Nos. 99-9533 & 99-9538

No. 00-9507

ORDER
Filed October 3, 2001

Before **EBEL** and **HENRY,** Circuit Judges, and **ROGERS**, District Judge.[*]

The National Labor Relations Board's motion to publish our order and judgment

---

[*] The Honorable Richard D. Rogers, District Judge for the District of Kansas,
sitting by designation.

dated July 10, 2001, is granted.  A copy of the published opinion is attached to this order.

Entered for the Court,

Patrick Fisher, Clerk of Court

By:

Deputy Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MJ METAL PRODUCTS, INC.,

     Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD,

     Respondent.

Nos. 99-9533 & 99-9538

NATIONAL LABOR RELATIONS
BOARD,

     Petitioner,

v.

No. 00-9507

MJ METAL PRODUCTS, INC.,

     Respondent.

---

**ON PETITION FOR REVIEW, CROSS-APPLICATION
FOR ENFORCEMENT AND APPLICATION FOR ENFORCEMENT OF
THE ORDERS OF THE NATIONAL LABOR RELATIONS BOARD
(Nos. 27-CA-15523, 27-CA-15549, 27-CA-15619, 27-RC-7813, and 27-CA-16575)**

---

Harry B. Durham, III, Brown, Drew, & Massey, LLP, Casper, Wyoming, for
Petitioner/Respondent MJ Metal Products, Inc.

William M. Bernstein, Senior Attorney, Leonard R. Page, General Counsel, Linda Sher,
Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel,

Washington, D.C., for Respondent/Petitioner National Labor Relations Board.

---

Before **EBEL** and **HENRY,** Circuit Judges, and **ROGERS**, District Judge.[*]

---

**HENRY**, Circuit Judge.

---

MJ Metal Products, Inc. (MJ Metal) challenges three decisions of the National Labor Relations Board (NLRB), issued on August 10, 1999, August 30, 1999, and January 12, 2000. The first NLRB decision affirmed an administrative law judge's conclusion that MJ Metal violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) and (a)(3), by discharging four employees because of their union activities and engaging in other unfair labor practices. In that decision, the NLRB also imposed a remedial bargaining order pursuant to NLRB v. Gissel Packing Co., 395 U.S. 575 (1969). The second NLRB decision certified a union of MJ Metal workers as a collective-bargaining representative. The third decision concluded that MJ Metal's subsequent refusal to bargain with the union violated sections 8(a)(1) and 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(1) and (a)(5). For the reasons set forth below, we affirm the NLRB's decisions.[1]

---

[*] The Honorable Richard D. Rogers, District Judge for the District of Kansas, sitting by designation.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument will not materially assist the disposition of this appeal.

## I.  BACKGROUND

The relevant facts are fully set forth in the administrative law judge's decision, and we summarize them only briefly.  MJ Metal manufactures stainless steel food service equipment in Casper, Wyoming.  After attending several meetings in September 1997, a majority of its employees signed cards authorizing Sheet Metal Workers International Association, Local Union # 207 (the union) to represent them in collective bargaining proceedings.  A few days after the second of these meetings, Mark Johnston, MJ Metal's president and owner, discharged two employees (Shannon Leedall and Kelly Martin) who had been hired a week before.  Mr. Johnston told both men that they were not performing their jobs adequately.

On September 26, 1997, the union filed a petition with the NLRB seeking an election among MJ Metal's production employees.  The NLRB scheduled a representation election for November 25, 1997.  Of  thirteen employees, six voted for the union, and six voted against it.  MJ Metal challenged the final ballot, which belonged to Shannon Leedall, arguing that he had been properly discharged from employment and that his vote should not be counted.  Following the election, Mr. Johnston discharged two other employees, Jay Newcombe and Brian Johnson.  Mr. Newcombe had worked for MJ Metal since April 1992 while Mr. Johnson had worked for the company since January

_____

See Fed. R. App. P. 34(a)(2)(C). The case is therefore ordered submitted without oral argument.

1989.

The union filed a complaint against MJ Metal alleging that it had committed unfair labor practices in violation of the NLRA. The NLRB consolidated the unfair practice charges with the representation proceeding involving the challenge to Mr. Leedall's ballot.

After conducting a hearing, an administrative law judge concluded that the following practices constituted violations of the NLRA by MJ Metal: (1) interrogation of employees by managers and supervisors regarding employees' attendance at union meetings and their support for the union; (2) Mr. Johnston's informing an employee that "if the employees wanted to go union he would hire journeyman sheet metal workers and that the current employees would all become apprentices, and that his company . . . would never go union," Aplt's App. vol. III, at 449 (administrative law judge's decision, issued Aug. 26, 1998); (3) Mr. Johnston's abrupt change in Mr. Johnson's work schedule in retaliation for union activity; (4) Mr. Johnston's discharge of Messrs. Leedall and Martin "as a result of their know[n] union adherence," id.; (5) Mr. Johnston's retracting an agreement to allow an employee (Earl Anthony Sanchez) to take time off because he was a union adherent; (6) Mr. Johnston's requiring two employees (Jay Newcombe and Brian Johnson) to document certain common errors because of their known union adherence; (7) Mr. Johnston's requiring Mr. Newcombe and Danny Ashley to submit a doctor's slip regarding their absence of work because of their union adherence; (8) Mr. Johnston's

4

discharging Mr. Newcombe and Mr. Johnson on the purported basis of insubordination but actually because of their union adherence; (9) coercive statements by a customer (attributable to the company) that identified certain employees as leaders of the union movement and suggested that the customer could act as an arbitrator of the dispute between management and employees; and (10) remarks by an MJ Metal salesman that unionization would result in the sale and closure of the company.

The administrative law judge further concluded that these unfair labor practices were "sufficiently serious and pervasive to warrant a remedial bargaining order." Id. at 451. He reasoned as follows:

> [MJ Metal's] unfair labor practices include threats that the Respondent would sell and shut down its Casper operations and the unlawful discharge of four employees comprising over 20 percent of the employees in the bargaining unit. Moreover, [MJ Metal's] unlawful treatment of [Brian] Johnson, by knowingly changing his work schedule in a manner designed to interfere with his ability to provide care for his seriously ill son, after accommodating [Mr.] Johnson in this regard for many years, is particularly egregious and sends a clear message to the employees that serious adverse repercussions will follow their selection of the Union as their bargaining agent. Such violations . . . are not likely to be remedied by the Board[']s traditional remedies short of a bargaining order, as they are likely to have a long term coercive impact on the employees' freedom of choice under the Act.

Id.

After MJ Metal filed exceptions, the NLRB issued a decision and order adopting a majority of the administrative law judge's findings and recommendations, including his

5

evaluation of the credibility of witnesses' testimony.  See Aplt's App. vol. III, at 487 n. 1

(NLRB decision and order, issued Aug. 10, 1999).  The NLRB rejected MJ Metal's

contention that a remedial bargaining order was not warranted.

In support of the latter conclusion, the NLRB reasoned that MJ Metal had engaged

in unfair labor practices from the day after the union requested recognition.  It noted that

the company had unlawfully discharged four union supporters, a violation that went "to

the very heart of [the NLRA]."  Id. at 488 (internal quotation marks omitted).  According

to the NLRB, MJ Metal's conduct "sent employees the unequivocal message that it was

willing to go to extraordinary lengths in order to extinguish the union organizational

effort."  Id. (internal quotation marks omitted).  It also noted that the severity of the

misconduct was compounded by the involvement of high-ranking officials within the

company; that, even though the discharged employees were entitled to reinstatement and

back pay, those remedies were not likely to erase the coercive effect of the unfair labor

practices, and that there had been a relatively short time between the unfair practices and

the issuance of the NLRB's order.  Finally, the NLRB found that there was no evidence

indicating that, without a bargaining order, MJ Metal was prepared to allow its employees

to exercise their rights under the NLRA.

Accordingly, the NLRB ordered MJ Metal to cease and desist from violations of

the NLRA.  It also required MJ Metal to take the following actions:  reinstate the

discharged employees and pay them for loss of earnings and benefits; remove from its

files any reference to the unlawful discharges; recognize and bargain upon request with the union; preserve payroll records regarding the amount of back pay due the discharged employees; post a notice explaining employees rights under the NLRA and the NLRB's order; and file a sworn certification with the Regional Director of the steps taken to comply with the order.

Finally, the NLRB instructed the Regional Director to open and count the disputed ballot of Shannon Leedall in the union election. If the majority of the votes (including Mr. Leedall's) had been cast for the union, the NLRB's order directed the Regional Director to issue the appropriate certification. On the other hand, if the union had not received a majority, the NLRB instructed the Director to set the election aside and dismiss the representation case.

Pursuant to the NLRB's order, the Regional Director opened Mr. Leedall's ballot and included it in the results of the union election. The revised count indicated that seven employees had voted for the union, and six had voted against it. As a result, on August 30, 1999, the Regional Director certified the union as the exclusive bargaining representative of the MJ Metal employees.

Following that certification, MJ Metal continued to contend that Mr. Leedall had been lawfully discharged and that, as a result, his vote should not have been counted. The company therefore refused to bargain with the union. In response, the union filed another unfair labor practice charge. On December 30, 1999, the NLRB issued a decision and

order concluding that MJ Metal had violated sections 8(a)(1) and 8(a)(5) of the NLRA by refusing to bargain with the union. It again required MJ Metal to cease and desist from unfair labor practices, to bargain with the union upon request, to reduce to writing any agreement reached with the union about the terms and conditions of employment, to post a remedial notice, and to file a sworn statement with the Regional Director regarding its efforts to comply with the NLRB's order.

## II. DISCUSSION

On appeal, MJ Metal first challenges the NLRB's decision that it discharged Messrs. Leedall and Martin because of their support of the union. It then argues that the evidence was insufficient to justify the imposition of "such a drastic remedy" as an order to bargain with the union. See Aplt's Br. at 20. Finally, it contends that because it discharged Mr. Leedall for legitimate reasons, his vote in the union election was improperly counted. As a result, MJ Metal maintains, its refusal to bargain with the union was not an unfair labor practice.

In challenging the conclusion that Messrs. Leedall and Martin were discharged because of their union activities, MJ Metal attacks the administrative law judge's factual findings. We review these findings to determine whether they are supported by substantial evidence. Webco Indust., Inc. v. NLRB, 217 F.3d 1306, 1311 (10th Cir. 2000). That standard "already gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the court that the requisite fact exists, but

8

merely the degree that could satisfy a reasonable factfinder." Id. (internal quotation marks omitted). Thus, "[i]f the Board has made a plausible inference from the evidence, we may not overturn its findings, although if deciding the case de novo we might have made contrary findings." Id. (internal quotation marks omitted). When, as here, the NLRB has referred a matter to an administrative law judge, "[his] credibility resolutions deserve great weight to the extent they are based on testimonial evidence of live witnesses and the hearing judge has had the opportunity to observe their demeanor." Id. (internal quotation marks omitted).

In contrast, MJ Metal's challenge to the NLRB's decision to issue a remedial bargaining order addresses a mixed question of law and fact. We therefore review that decision for an abuse of discretion. See Ann Lee Sportswear, Inc. v. NLRB, 543 F.2d 739, 743 (10th Cir. 1976).

### A. Discharge of Messrs. Leedall and Martin

Section 8(a)(1), 29 U.S.C. § 158(a)(1), prohibits an employer from interfering with, restraining, or coercing employees who exercise certain rights under the NLRA, including "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." See 29 U.S.C. §§ 157, 158(a)(1). Section 8(a)(3) prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to

9

encourage or discourage membership in any labor organization." See 29 U.S.C. § 158(a)(3).

In applying these statutes, we have adopted a burden-shifting approach. "Initially, the [NLRB's] General Counsel must establish that the employee's protected conduct was a substantial or motivating factor in the discharge decision; thereafter the burden shifts to the employer to show that it would have reached the same decision absent the protected conduct." Ready Mixed Concrete Co. v. NLRB, 81 F.3d 1546, 1550 (10th Cir. 1996) (internal quotation marks omitted).

An employer's antiunion motivation may be proven by circumstantial evidence. Intermountain Rural Elec. Ass'n v. NLRB, 732 F.2d 754, 759 (10th Cir. 1984). Thus, proof of an employer's specific intent to discriminate is unnecessary, and the evidence may provide a presumption of intent. Presbyterian/St. Luke's Med. Ctr. v. NLRB, 723 F.2d 1468, 1476 (10th Cir. 1983). The NLRB may consider factors such as the employer's knowledge of the employee's union activities, the employer's commission of other unfair labor practices, the timing of the employer's action, and the credibility of its explanation of the reasons for the discharge. See Ready Mixed Concrete Co., 81 F.3d at 1550–51.

Here, MJ Metal contends that there is a lack of substantial evidence supporting the conclusion that anti-union animus was a motivating factor in the discharges of Messrs. Leedall and Martin. In particular, MJ Metal challenges the administrative law judge's

10

finding that the two employees were not informed of the company's one-week probationary period for new employees. It also challenges the judge's reliance on the testimony of two supervisors that the discharged employees were doing adequate work. Additionally, MJ Metal argues that the judge and the NLRB erred in relying on the short period of time between the employees' public support of the union and their discharges. Finally, MJ Metal points to evidence that another recently hired employee (William Lawrence) also supported the union but was not fired. According to MJ Metal, the reason for discharging Mr. Leedall and Mr. Martin but not Mr. Lawrence was the inferior quality of their work.

Upon review of the record, we are not convinced by these arguments. With regard to the administrative law judge's finding that the two employees were not told that they were on a period of probation, we note that there was conflicting evidence on this point and that the judge acted within his discretion in believing these two employees rather than MJ Metal's witnesses. More importantly, the judge found that, even if the two employees had been told of the probationary period, their discharge was still not justified by the deficiencies in their work asserted by MJ Metal.

On this point, the judge properly relied on the testimony of two other employees—team leaders Mr. Newcombe and Mr. Miller—that the work of Messrs. Leedall and Martin was satisfactory. Although MJ Metal correctly notes that Mr. Miller admitted that "[w]e really didn't have time to see what kind of work [Mr. Leedall and Mr.

11

Martin] were doing," Mr. Miller also stated that the two discharged employees were progressing in their work "okay." Aplt's App. vol. I, at 165-66. MJ Metal correctly observes that Mark Johnston (its president and owner) testified that the work of Messrs. Leedall and Martin was deficient and that it was because of that deficient work that they were discharged. However, the other team leader, Mr. Newcombe, testified that he never observed Mr. Johnston or production manager John Dykes inspecting that work. Aplt's App. vol. II, at 311. According to Mr. Newcombe, "[f]or new people[,] they were doing at least average, if not better." Id. at 309. In light of this testimony, the administrative law judge was entitled to reject Mr. Johnston's explanation of the discharges.

Similarly, we discern no error in the administrative judge's reliance on the timing of the discharges. Under our cases, this is one of many factors that may be considered in assessing the employer's motivation. See Ready Mixed Concrete Co., 81 F.3d at 1550–51. Aside from the timing of the discharges, there is considerable evidence supporting the finding of anti-union animus, including the testimony of Mr. Miller and Mr. Newcombe that the discharge employees were doing adequate work, evidence of anti-union statements made by MJ Metal's president and owner, and other instances of retaliatory action found by the judge and not objected to by MJ Metal.

Finally, the fact that MJ Metal did not discharge a third employee (William Lawrence), who was hired at the same time as Messrs. Leedall and Martin and who was also a union supporter, is not dispositive. As the NLRB notes, an employer's failure to

12

take action against "all pro-union employees does not necessarily undermine the NLRB's finding of unlawful motivation." NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 937 (5th Cir. 1993).

Thus, the administrative judge's finding that MJ Metal unlawfully discharged these two employees is supported by substantial evidence.

### B. Remedial Bargaining Order

MJ Metal also challenges the NLRB's issuance of a remedial bargaining order, arguing that the unfair labor practices found by the NLRB are insufficient to support such a remedy. In support of this contention, it first reasserts the argument that the discharges of Messrs. Leedall and Martin were not retaliatory. It then attacks the NLRB's findings that MJ Metal managers and supervisors improperly interrogated employees about their union activities and threatened adverse action if they continued to support the union. According to MJ Metal, the various incidents noted by the administrative law judge merely involved management stating its views about unionization, and "[t]he NLRA does not compel an employer to remain silent regarding his feelings regarding a union." Aplt's Br. at 22. Additionally, MJ Metal contends that because the vote of Mr. Leedall should not have been counted in the election, "there is simply no evidence that a union majority was dissipated by MJ Metal's actions." Id. at 27.

In Gissel, the Supreme Court held that the NLRB may issue a remedial bargaining order when an employer's unfair labor practices, although not "outrageous" or

13

"pervasive," still "have the tendency to undermine majority strength and impede the election processes." 395 U.S. at 613-14. The Court further explained that, "[i]f the [NLRB] finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue." Id. at 614-15. The Court added that reviewing courts should afford substantial deference to the NLRB's selection of an appropriate remedy. See id. at 612 n.32 ("In fashioning its remedies . . . [the NLRB] draws on a fund of knowledge and experience all its own, and its choice of remedy must therefore be given special respect by reviewing courts."); see also Artra Group, Inc. v. NLRB, 730 F.2d 586, 593 (10th Cir. 1984) ("The [NLRB's] position that [a remedial bargaining order] is a proper remedy is based on its expertise, and the choice of remedy is entitled to special respect by appellate courts.").

In light of this standard, we are unconvinced by MJ Metal's challenge to the issuance of a remedial bargaining order. Because we have rejected MJ Metal's challenge to the findings concerning the discharges of Messrs. Leedall and Martin, the record supports the conclusion that MJ Metal terminated four employees (Mr. Leedall, Mr. Martin, Mr. Johnson, and Mr. Newcombe) because of their union activities. Courts have recognized that the discharge of union supporters may constitute a serious infringement of the NLRA. See NLRB v. Wilhow Corp., 666 F.2d 1294, 1304 (10th Cir. 1981) (noting

14

that "[a]n unlawful termination of an employee under § 8(a)(3) may raise a question in determining whether a fair election can be held"); see also NLRB v. Gordon, 792 F.2d 29, 33 (2d Cir. 1986) (stating that "[t]hreats of discharge of union adherents are hallmark violations" that "will support the issuance of a bargaining order unless some significant mitigating circumstance exists") (internal quotation marks omitted); NLRB v. Davis, 642 F.2d 350, 353 (9th Cir. 1981) (characterizing the discharge of union supporters as "among the most serious infringements of [the NLRA]").  Here, as the NLRB observes, it was reasonable to conclude that the effect of the discharges was heightened by the small size of the company:  MJ Metal discharged four union supporters in a unit of fifteen employees.

Moreover, in its August 10, 1999 order, the NLRB noted many other unfair labor practices, including "retaliating against unit employees for their union activity by changing their work schedules, requiring them to bring doctor's slips when they are absent and to document repairs to products and refusing to give them previously approved time off for personal business; . . . [and] threatening to demote employees to apprentice positions and hire journeymen sheet metal workers if employees select[ed ] the Union to represent them."  Aplt's App. at 487-88.  The NLRB added that high-ranking officials had been involved in these violations.

Substantial evidence supports these findings.  Accordingly, we conclude that the NLRB did not abuse its discretion in issuing a remedial bargaining order.

15

## C.  MJ Metal's Refusal to Bargain with the Union

As noted above, on January 12, 2000, the NLRB issued a decision and order concluding that MJ Metal unlawfully refused to bargain with the union following its certification as an exclusive bargaining agent, thereby violating section 8(a)(1) and 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(1) and (5).  In light of our conclusion that the NLRB properly counted the vote of Mr. Leedall, this decision and order is supported by the record and the applicable law.

## III.  CONCLUSION

Accordingly, we AFFIRM the decisions of the NLRB.